BOND v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Seventh Circuit. November 18, 1903.)

No. 1,023.

1. RAILROADS—RIGHT OF WAY—USE OF STREETS—INJUNCTION—RIGHTS OF PROPERTY OWNER—ESTOPPEL.

Prior to the use of a street by a railroad, B., an abutting property owner, claiming to own the fee in the street, brought suit in the state court for an injunction to restrain the threatened trespass and to establish his title, in which he was finally successful, but before final decree the railroad seized the street and laid tracks thereon, after which a city

ordinance was passed requiring the company to elevate its tracks in the street, which it threatened to do by the erection of stone walls, whereupon B. filed another complaint to restrain such act, and demanding compensation for the use of the street if his injunction was denied. This suit was removed to the federal courts, after which the railroad's lessor began suit to condemn B.'s rights in the street, which he removed to the federal courts. *Held*, that the filing of B.'s second complaint to restrain the second trespass did not constitute a waiver of his rights under the decree in the first suit, so as to preclude him from maintaining a petition therein to punish the railroad's officers for violating that decree.

2. SAME.

Where an abutting landowner sued to restrain a railroad from using a street in front of his property, and, after he had recovered therein, the railroad's lessor, for its benefit, sued to condemn his rights in the street, but the verdict in the condemnation proceeding, which allowed interest on the amount awarded from the date of the filing of the petition, was set aside, and a new trial granted, the award of such interest did not estop the landowner from enforcing his first decree restraining the railroad from using the street.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

William Ritchie, for appellant.

Frank J. Loesch, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. The controlling facts in this case may be summarized thus: Prior to 1889, Chicago, by ordinance, authorized appellee and its lessor to build a railway track on Stewart avenue. Bond owned lot 1 on that street. Claiming that Stewart avenue had been laid out under a common law, and not a statutory dedication, he insisted that he owned the fee to the center of the street, and that the ordinance was no justification for the company's entering upon his fee without first paying him a just compensation, even if the appropriation under any circumstances was authorized by law, which he denied. The company intended to act under the ordinance as a sufficient authority, but before it entered Bond brought suit in the state court for an injunction. After protracted litigation, Bond, on June 6, 1900, obtained in the state court a final decree. In the meantime the company, in 1892, in the face of the pending litigation, seized possession of that part of lot 1 which lay in Stewart avenue, and built a track and ran trains thereon. On June 18, 1900, Chicago ordained that the railway company elevate its tracks. On July 17, 1900, Bond filed a complaint in the state court alleging, in substance, that the company, claiming the track elevation ordinance as a sufficient authority, was threatening and intending to erect high stone walls and earth embankments on those parts of lots 1 and 8 which lie in Stewart avenue, and of which he owned the fee, forcibly and without right, and to his great and irreparable damage; that lot 8 is covered by the same plat and dedication as lot 1; that in the decree of June 6, 1900, his title in fee to the center of Stewart avenue in front of lot 1 had been established, and that thereby the fact of his title in fee to the center of Stewart avenue in front of lot 8 had been adjudicated between the parties, and that the company was

estopped thereby from litigating again the nature of his title or interest in Stewart avenue; that whether the court should find the track elevation ordinance to be in effect a vacation of Stewart avenue, or not a vacation, but a proper license for the use of the public easement, or void as being an illegal attempt to sanction obstructions in the street, in any event the proposed walls and embankments would infringe upon his constitutional right of property, of which he could not be deprived unless he were first paid a just compensation in a condemnation proceeding, the right to maintain which he denied. Appellee, a Pennsylvania corporation, removed this suit into the federal court, and filed an answer denying Bond's title. There has never been a hearing on this complaint and answer. On April 17, 1902, appellee's lessor, for appellee's benefit, began proceedings in the state court to condemn Bond's fee in those parts of lots 1 and 8 which lie in Stewart avenue. Bond, a citizen of Connecticut, removed the condemnation case into the federal court. One trial has been had, the award of the jury set aside on appellee's application, and the case is pending for retrial. On May 2, 1903, Bond filed a petition in the suit in the state court asking that appellee and its officers be held guilty of contempt in violating the final decree of injunction of June 6, 1900. Thereupon appellee filed an application in the form of a cross-bill in Bond's injunction suit that had been removed into the federal court to enjoin Bond from enforcing the final decree of June 6, 1900. In support of and in opposition to the application the state of things hereinabove narrated was disclosed. From an interlocutory order sustaining the application this appeal is prosecuted.

The application might as well have been filed in the condemnation case, but, wherever filed, the question is the rightfulness of the order.

If there had been any circumstances to show that Bond had consented to or acquiesced in the company's original entry, and that under such an entry the company had constructed its road and had begun to perform its services to the public, Bond could not have maintained ejectment to dispossess it, or injunction to restrain its continued service. But such was not the case. Before the company entered, Bond stood at the threshold, not with arms, but with a suit to prevent the entry. The state court has forever settled that the company had no right to enter without Bond's consent, that its original entry was illegal, and that its continued possession is wrongful until it can show Bond's consent by his own act or by operation of law.

Appellee contends, in effect, that Bond's bill in his second and pending suit for injunction must be construed as a consent to continued possession. In his first suit, on his showing his title and a threat of a particular trespass, namely, the building and maintaining of a track on the surface, he vindicated the right given him by the Illinois Constitution to keep the company out until his just compensation had first been determined and paid; or if, as he contended, there was no legal right to maintain condemnation proceedings, to keep it out eternally. That first suit counted on a particular threatened trespass upon lot 1. The second suit involves additional property, but with respect to lot 1 shows the company's entry in the face of the

first suit, the commission of the threatened trespass therein alleged, the threat to commit new and additional trespasses by erecting high walls and embankments, and prays that such new threatened acts be enjoined. The decree in his first suit would protect him against the first trespass. He needed no new nor additional decree for that. Perhaps he needed none to protect him from the second and additional threatened trespasses; but because he did ask it we think the insistence somewhat remarkable that he thereby released or lost the protection that had been adjudged his, that an objection to new trespasses is a waiver of the original trespass by which the wrongdoer gained the possession under which he now purposes to commit more.

So far as the track elevation ordinance is concerned, it gave the company no greater rights against Bond than did the first ordinance under which the company claimed the right to enter to build the surface track.

If the court that has jurisdiction of the condemnation case needed present control of the possession of the property in order to render effective the final judgment that may be rendered therein, the case would be different. But if it turns out that appellee's lessor has no right to maintain appropriation proceedings, the court will not need possession to effectuate that judgment, and, if the company ultimately succeeds in maintaining its case, and the amount of Bond's just compensation is determined and paid, the decree of June 6, 1900, will thereby become dead, and the court will have ample power to put the company in possession if Bond should then resist. But when a landowner stands at his boundary, and continuously forbids a railroad company to enter without first establishing its right to condemn and then determining and paying his just compensation, the court not only does not need possession pending the litigation of those questions, but has no lawful power to take it.

Appellee calls attention to the fact that on the trial heretofore had in the condemnation case the jury added to the value of Bond's estate in the land interest on that amount from the date of the filing of the petition to condemn, and urges that Bond is thereby estopped from enforcing his decree. The petition to condemn was not filed until the company had been in possession 10 years. Bond did not accept the interest as the value of possession. The verdict was set aside. The case is now standing as though it had never been tried. Maybe it never will be. The company may dismiss it. If a final judgment ever is entered and paid, it may not include interest. So far as we are advised, the Illinois Supreme Court has not determined that the Legislature intended interest to stand for present right of possession or compensation for previous legal or illegal possession, much less that the Legislature by an interest provision could legalize the seizure of property over the owner's continuous insistence upon his constitutional right.

The injunctional order is reversed, with direction to dismiss the application for want of equity.